COMMONWEALTH *vs*. JOHN B. ZUKOSKI.

Essex.   January 5, 1976. — April 2, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN,
& WILKINS, JJ.

*Homicide.   Practice, Criminal,* Charge to jury. *Joint Enterprise. Evidence,* Recent invention, Admissions and confessions. *Jury and Jurors.*

Testimony of the defendant at a murder trial that the victim threw a glass at him and he swung at it and not at the victim but hit her in the face, and that he did not thereafter touch her did not require an instruction to the jury on assault and battery. [24-25]

Testimony of the defendant at a murder trial that the victim fell when he accidently hit her, and that a companion of the defendant thereafter repeatedly kicked her while the defendant tried unsuccessfully to stop him did not require an instruction to the jury concerning joint enterprise. [25-26]

At a murder trial, the judge properly excluded testimony of two attorneys that several days after the defendant's arrest he had stated that a named companion was the killer, offered to show that the defendant's testimony to that effect was not recently contrived, where the attorneys' testimony was offered at a time when two prior inconsistent statements of the defendant were already in evidence and where there was no suggestion of recent contrivance. [26-28]

At a murder trial, the twenty-three year old defendant's statement to the police concerning his altercation with the forty-four year old victim, culminating in her throwing a glass at him, his punching her and her falling to the ground, whereupon he "kicked her I don't know how many times," together with his testimony that he was under the influence of alcohol and LSD and that the victim swore at him did not require an instruction to the jury on voluntary manslaughter. [28-29]

Evidence at a murder trial warranted findings that the oral and written confessions of the defendant and the waiver of his *Miranda* rights were voluntary and knowing, and that any violation of the defendant's rights under G. L. c. 276, § 33A, to use a telephone were not so substantial as to require suppression of his written confession. [29-30]

There was no error in the denial of a motion to dismiss an indictment
for murder against a defendant who offered no evidence that paupers
had been excluded from the juries which indicated him or tried him.
[30]

INDICTMENT found and returned in the Superior Court
on September 22, 1970.

The case was tried before *Thompson,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Susan J. Baronoff* for the defendant.

*Robert J. O'Sullivan,* Assistant District Attorney, for
the Commonwealth.

WILKINS, J.    The defendant appeals under G. L. c. 278,
§§ 33A-33G, from a conviction of murder in the second
degree. The victim, a woman in her middle forties, was
kicked to death on South Lawrence Common one night
in early September, 1970. That night the defendant ad-
mitted, first to an acquaintance and then to the police,
that he had been with the woman but claimed that they
had been "jumped" by three people he could not identify.
The next afternoon, after questioning, the defendant
changed his story and told the police that he had punched
the victim when she threw a glass at him, admitting that
he kicked her more than once after she fell to the ground.
At his trial, giving a third version of the events of that
night, the defendant testified that he struck the victim
accidentally when he swung at a glass which she threw at
him; that she fell when he hit her; and that a companion,
one Smith, thereafter repeatedly kicked the woman, while
the defendant tried to stop him.

Additional facts involved with the various issues argued
by the defendant will be set forth as those points are con-
sidered. There was no error.

1. The defendant asserts that the judge should have in-
structed the jury that they could find the defendant guilty
of the lesser included offense of assault and battery. The
defendant relies on his testimony at trial that the victim

threw a glass at him; that he swung at the glass and not at her, but hit her in the face; and that he did not thereafter touch her. The defendant contends that, if the jury believed this testimony, they could have found him guilty of no more than assault and battery and that the judge should have given them the opportunity to do so. An instruction on assault and battery must be given if the evidence would warrant a finding that a defendant charged with murder was guilty of that lesser included offense. *Commonwealth* v. *Curry*, 368 Mass. 195, 203 (1975). See *Commonwealth* v. *Hogg*, 365 Mass. 290, 295 (1974); *Commonwealth* v. *McKay*, 363 Mass. 220, 228 (1973).

The evidence on which the defendant relies does not support his claim that assault and battery was a permissible jury finding. The defendant does not claim that there was evidence that he hit the victim intentionally when he struck at the glass she threw at him. He does suggest, however, that his act of swinging at the glass and hitting the victim could have been found to be an assault and battery as "the intentional doing of a wanton or grossly negligent act causing personal injury to another." *Commonwealth* v. *McCan*, 277 Mass. 199, 203 (1931). *Commonwealth* v. *Campbell*, 352 Mass. 387, 397 (1967). The act of swinging in apparent self-defense at the glass which was thrown at him does not constitute wanton or reckless conduct. There was no "high degree of likelihood that substantial harm [would] result to another" from the defendant's conduct. *Commonwealth* v. *Welansky*, 316 Mass. 383, 399 (1944). See *Commonwealth* v. *McCauley*, 355 Mass. 554, 560 (1969); *Commonwealth* v. *Campbell*, 352 Mass. 387, 397 (1967). If the jury had believed the defendant's testimony, the only verdict they could have returned, even as to assault and battery, was a verdict of not guilty. *Commonwealth* v. *Curry*, 368 Mass. 195, 203 (1975).

2. The defendant next claims that the judge should have instructed the jury that the defendant could not be found guilty on the basis of any acts the defendant attributed to Smith, unless they found "that the defendant was acting with a common criminal purpose, and that ... [Smith's

act] was a natural or necessary consequence of the common criminal purpose."

The defendant contends that the jury should have had such an instruction to guard against their concluding that the defendant was responsible for Smith's kicking of the victim. If the jury believed the defendant's account of the incident, there was no logical basis for them to assume that the defendant was criminally responsible for Smith's acts. Indeed, the defendant testified that he tried unsuccessfully to stop Smith from kicking the victim. The prosecution did not attempt to prove a joint enterprise or to argue that the jury could believe the defendant's story and still convict him. A reasonable jury would not have found the defendant guilty on the theory, which was not suggested to them, that the defendant was responsible for what he testified Smith did. In these circumstances, a warning instruction concerning joint enterprise was not required. Cf. *Commonwealth* v. *Benders,* 361 Mass. 704, 707-708 (1972), where the issue of joint venture was the principal contested issue and the charge did not present clearly the distinction between participation and mere presence.

3. The defendant next argues that certain excluded evidence was admissible to rebut any implication that his testimony that Smith killed the victim was recently contrived. The defendant offered the testimony of two attorneys that several days after his arrest he had named a companion as the one who had killed the victim. The judge properly excluded the evidence.

The long standing, general rule in this Commonwealth is that a witness's prior consistent statement is inadmissible, even where a prior inconsistent statement of the witness has been admitted. *Commonwealth* v. *Tucker,* 189 Mass. 457, 479-485 (1905). *Commonwealth* v. *Jenkins,* 10 Gray 485, 488-489 (1858). See K.B. Hughes, Evidence § 236 (1961). As an exception to this general rule, however, a witness's prior consistent statement is admissible where a claim is made that the witness's in-court statement is of recent contrivance or is the product of particular in-

ducements or bias. *Commonwealth* v. *Carroll,* 360 Mass. 580, 588-589 (1971). *Commonwealth* v. *Corcoran,* 252 Mass. 465, 487-488 (1925). *Walsh* v. *Wyman Lunch Co.,* 244 Mass. 407, 409-410 (1923). *Commonwealth* v. *Retkovitz,* 222 Mass. 245, 249-250 (1915). See *Commonwealth* v. *Jenkins, supra* at 489-490. Unless admissible on some other ground to prove the truth of the facts asserted, such a prior consistent statement is admissible only to show that the witness's in-court testimony is not the product of the asserted inducement or bias or is not recently contrived as claimed. *Commonwealth* v. *Carroll, supra* at 588. The trial judge has a range of discretion in determining whether a suggestion of recent contrivance exists in the circumstances. Compare *Commonwealth* v. *Caine,* 366 Mass. 366, 368 (1974), *Commonwealth* v. *Pickles,* 364 Mass. 395, 401 (1973), *Commonwealth* v. *Carroll,* 360 Mass. 580, 588 (1971), and *Commonwealth* v. *Heffernan,* 350 Mass. 48, 51-52, cert. denied, 384 U.S. 960 (1966) (suggestion of recent contrivance), with *Boutillette* v. *Robbins,* 338 Mass. 195, 197-198 (1958), *Commonwealth* v. *Giacomazza,* 311 Mass. 456, 467 (1942), *Ouellette* v. *Chapman,* 284 Mass. 363, 365 (1933), and *Commonwealth* v. *Tucker, supra* at 484-485 (no suggestion of recent contrivance or prior concealment). However, the mere admission of a prior inconsistent statement does not justify a conclusion that a claim of recent contrivance is inherent in the circumstances. *Wilson* v. *Jeffrey,* 328 Mass. 192, 194-195 (1951) (prior consistent statement improperly admitted).

Here the defendant wished to show that his testimony that Smith killed the victim was consistent with his statement to attorneys who visited him several days following his arrest. At this time in the trial, two other, inconsistent, statements of the defendant were already in evidence: the defendant's first statement to the police that he and the victim had been "jumped" by three unknown assailants and the defendant's confession. The question of when the defendant first adopted his third explanation of the events of that night was never in issue, expressly or impliedly. The prosecutor established by cross-examination of the

defendant that the defendant's testimony was inconsistent with his earlier statements, but he did not raise the question of when, following his earlier statements, the defendant adopted his final explanation. Because the statement to the attorneys was not made prior to the other statements, the exception to the general rule against the admission of prior consistent statements has no application here.

4. The judge was correct in declining to instruct the jury that voluntary manslaughter was a possible verdict. The defendant argues that the facts shown in his written confession to the police permitted a finding of voluntary manslaughter and that an instruction on manslaughter should have been given. Of course, consistent with what we said earlier with respect to assault and battery as a lesser included offense, the jury should be instructed on manslaughter "where any view of the evidence will permit a finding that the offence is manslaughter and not murder." *Commonwealth* v. *LePage*, 352 Mass. 403, 419 (1967). *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 745-746 (1975), and cases cited.

Voluntary manslaughter is "a killing from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat." *Commonwealth* v. *Soaris*, 275 Mass. 291, 299 (1931). *Commonwealth* v. *Caine*, 366 Mass. 366, 375 (1974). Insults or quarreling alone cannot provide a reasonable provocation. *Commonwealth* v. *Vanderpool, supra* at 746-747. *Commonwealth* v. *Hartford*, 346 Mass. 482, 491 (1963).

With these principles in mind, we consider the defendant's statement in more detail to see whether voluntary manslaughter was a permissible jury conclusion. His statement to the police was that he had met the victim in a café and that, when he left the café, she followed him into the common, carrying a glass of beer. "I asked her if she was married and she said yes and I asked her if she had any kids and she said six, and I said don't you think you ought to be home with them, and then she threw the glass at me. I told her she was crazy and I punched her in the face and she started to bleed, and she fell to the ground. She then

started to call me a sex maniac, and I blew up and while she [was] still on the ground I kicked her I don't know how many times . . . ." The defendant testified that he was under the influence of alcohol and LSD at the time and that the victim swore at him as she threw the glass at him from a distance of two or three feet.

The evidence does not show that the twenty-three year old defendant had any reasonable provocation for kicking the forty-four year old victim as she lay on the ground. Any threat from the thrown glass had passed when the defendant struck the victim and knocked her to the ground. There was no other provocation. No charge to the jury on voluntary manslaughter was required. *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 747 (1975).

5. The defendant challenges the judge's denial of his motion to suppress his oral and written statements. The defendant argues that the statements were involuntary, made without a valid waiver of Miranda rights, and obtained in violation of his rights under G. L. c. 276, § 33A (concerning his right to the use of a telephone). The judge died before making findings and rulings on the motion to suppress. He heard extensive evidence before trial and further evidence on a voir dire during trial.

We have reviewed all of the evidence. Repetition of it here would not add to our jurisprudence. The judge's conclusion that the statements were admissible was plainly warranted on the evidence. The defendant was given Miranda warnings repeatedly. He was not denied food or drink during the period he was with the police before he confessed. No pressure was put on him by the police. The evidence warranted findings that the oral and written confessions and the waiver of his Miranda rights were voluntary and knowing.

Although the record does not clearly show that the defendant was advised promptly of all the purposes for which he had a statutory right to use a telephone when he arrived at the police station under arrest (G. L. c. 276, § 33A), he was given timely opportunity to use the telephone. There was evidence that he used the telephone in

the police station before he confessed and before he was in custody; that later, when he arrived at the police station under arrest, he was told he could telephone anyone he wished; and that he called someone from the police station before his written confession was taken down. His wife's and his own testimony indicate that the defendant was allowed to use the telephone within about one hour of his arrival at the police station following his oral confession which led to his arrest. Any violation of the defendant's statutory rights was not so substantial that his written confession should be suppressed. *Commonwealth* v. *Daniels*, 366 Mass. 601, 610 (1975).

6. We decline to change our previously expressed views concerning a claim by a defendant that he was denied his constitutional rights because paupers were excluded from the jury. *Commonwealth* v. *Stone*, 366 Mass. 506, 509-510 (1974). The defendant had the burden of proof and offered no evidence that paupers were excluded from the juries which indicted him or tried him. The conclusions expressed by a panel of Federal District Court judges to the Judicial Council of the First Circuit are contrary to the defendant's assertion that paupers have been excluded from juries in eastern Massachusetts. See Report of the District Court Panel on Jury Selection in the District of Massachusetts, 58 F.R.D. 501, 504-505 (1973).

7. We have performed our obligation under G. L. c. 278, § 33E, and find no reason to order a new trial or to direct the entry of a verdict of a lesser degree of guilt.

*Judgment affirmed.*